Good morning. Jonathan Soglin on behalf of the appellant, Mr. Yates. Jason Yates is serving a sentence of life without parole, serving that for a homicide committed when he was 18 years old. The conviction for murder in this case stemmed from a trial which was not just imperfect, but suffered from numerous constitutional defects. What I'll do this morning is focus on the most significant, which is the disparagement of counsel, with some comments on some of the other claims, and then also trying to tie it all together and identify the prejudice in this case. The disparagement of counsel in this case came during a closing argument when counsel had, defense counsel had referred to testimony that was not before the jury. The judge, instead of telling the jury there was no such testimony, disregarded, went further to a degree that created the constitutional problem. The judge told the jury that not only was the statement grossly negligent, but also that counsel, defense counsel, had a copy of the prior testimony and knew there was no such testimony as he had described in his argument, essentially telling the jury that counsel had told them facts that didn't exist and that he knew didn't exist. The court went on further and told the jury that they were to find, telling them to make a finding, make a finding that such statements were made with the intention to strengthen his arguments and to influence the deliberations. This is, we've discussed in the briefs a number of different ways of characterizing this, whether it's instructional error or putting before the jury improper influences, improper factors, which is the conduct of counsel being improper factor. Whatever you call it, the effect of it is tremendous. You're telling the jury. Ginsburg. Let me just ask you sort of like a bottom-line question. Sure, it was a strong admonition. And but the judge also gave the standard instruction that the jury is not to take anything that he said as indicating what it shouldn't find in the case. So given both of those things, why was it contrary and to what law was it contrary that is clearly established for the U.S. Supreme Court to find that it didn't really affect anything? Well, let me just sort of discuss two lines of cases. One is just the impermissible factor line. I'm talking about Holbrook and Estelle v. Williams, which talk about the improper factors coming before a jury. Holbrook, the argument was, was the argument. Well, this was all before the jury. I mean, so the judge may have used stronger language than preferable. But the jury, I mean, it was all conduct in front of the jury. So it's not as if something extraneous came in front. Oh, but what they didn't know was what counsel knew and whether counsel simply made a mistake, as opposed to the implication of the court's argument, which was counsel knew that the testimony he described didn't exist, which takes it to another level of these are facts, and the judge is telling them to treat it as a fact, that they don't know. They don't know that this testimony didn't exist. They knew it wasn't before them, but the judge was telling him, tell the jury, these are facts that counsel knew didn't exist. I guess, you know, it's interesting, because when I read that, I wasn't, I didn't read it as if they don't exist in the world at large. I read it that they didn't exist in the trial. So it's just interesting. Right. So the prejudice, I mean, you're suggesting there's sort of a larger prejudice because not only is this guy a bad guy for putting this stuff, trying to argue it to the jury, but that he's also creating facts in a way. But doesn't it boil down to the same thing, that the jury's just basically being told these aren't facts? This isn't evidence you can think about. Well, a judge could say, counsel told you something that isn't before you. Disregard it. Or the judge could say, counsel told you something, and it comes from a transcript and says prior, counsel have all had copies of Mr. Tucker's prior testimony and know there is no such testimony. And go on to say that counsel did this with the intent to influence your declarations. That's of a different order than just saying this testimony doesn't exist. Disregard it. And that's what puts it over the hump and creates it. Well, was that an accurate statement, that counsel have had copies of Mr. Tucker's prior testimony and there is no such testimony? I believe the testimony was that they had excised that information. It wasn't to go to the they all agreed that this prior testimony, which had been read to the jury, would not include this information. So that's not really inaccurate in the context of the trial. It's whether the question isn't whether it's accurate. It's whether the jury should know about it. It's fine. It's one thing to tell the jury, and it's the context of the rest of the admonition. The judge isn't just saying these facts don't exist. The judge is saying counsel knew they didn't exist and did this with the intent to strengthen his arguments and influence your deliberations and called it grossly negligent. Could it have been a stronger admonition? It could have been worse, certainly. But this went beyond what was necessary. And the State court of appeal is concerned here. They, first of all, found nothing improper about it, which I've argued is incorrect. They also had concern about the co-defendant, which I want to acknowledge. This had implications for the co-defendant. It was the co-defendant primarily who was objecting to this argument. And that's a sort of question of who gets to have a fair trial. Does a defendant, in this case Jason Yates, not get to have a fair trial because his attorney did something that harmed another defendant? If that's the problem, you remedy that with a new trial for the other defendant and not by impugning the defendant who should not have to carry the burden of some untoward act by his attorney and the jury being influenced by that. Getting back to the question of the framework for the analysis of the issue, I talked about Holbrook and Estelle v. Williams, sort of the improper influence of a fact and not before the jury. The other framework really comes as the instructional error type of framework that the State has put forward actually really throughout the case, starting in the State court of appeal, saying this is an instruction and you have to consider it as an instruction. Indeed, Estelle v. McGuire says if there's a reasonable likelihood that the jury applied the instruction in a way that violates the Constitution, that can be remedied. Here, this is where the factors, the frameworks kind of overlap. The way this violates the Constitution is bringing in improper consideration before the jury for them to think about counsel's mistake, counsel's bad conduct as a factor before them. That's the improper factor. Whether this Estelle v. McGuire itself applies, the question is, is this an ambiguous instruction? Estelle v. McGuire only applied the reasonable likelihood test for ambiguous instructions. I would say this is not an ambiguous instruction. It was very clear, telling the judge, telling the jury, this is what happened and you are to find A and B. It's a pretty clear instruction on that part. So I don't think it's ambiguous.  The effect is really tremendous in a case like this. Here you have a homicide committed. Only two people know what happened, and those are the two people at trial. Both are testifying. Both are saying the other guy did something surprising, shot the victim. It's a credibility contest. No one knows but these two men what happened out there. And you have a jury that's got all these facts coming before them, and they are hearing testimony, hearing stories from the two sides. Credibility is critical. Kennedy had it only really to do with the attorney. Well, but the attorney is speaking for the defendant. The attorney is the face and the voice of the defendant in the courtroom making a closing argument, a very long closing argument. The attorney's credibility is critical. He's there as a spokesperson, representative of the defendant and the jury. The association between counsel and the client in a jury trial like this that's gone on for a long time is critical. They've heard him make objections. They've heard everything he's done throughout the case is tainted by their perception of him as being somebody who is not to be trusted, that he had tried to do something very sneaky. And so this affects their weighing of the evidence and the credibility of the defense arguments. And when they have the two, the disparate stories being told by the two defendants, this disparagement has an influence on that. Coupled with, and I move on now to another argument of the, particularly the claims about the failure to give a limiting instruction on the bad acts evidence. A tremendous amount of prior acts and bad acts evidence came in before the jury without a limiting instruction. Counsel failed to ask for that. That's piling on of this sort of factors, facts and evidence affecting credibility determinations. And another one, of course, is the failure of counsel to object to the hearsay evidence of the statements by Keeter, the co-defendant's mother and sister, talking about these tearful statements that Keeter made implicating the defendant. Those statements would have been imbued with quite a bit of credibility coming from the mother and the sister of Keeter crying and saying. He testified, didn't he? Keeter, they both testified, yes. So nothing that the mother said, except softening him up a bit by saying he was crying, nothing that the mother said is any different from what he said, because he certainly said I, I mean, there's a murder, but I didn't do it, he did it. So that's all his mother said he said was he said he saw a murder. So why is it consequential, and why at the end of the day wasn't it actually favorable testimony for the defendant? Because it allowed him to bring out all sorts of bad things about Keeter. Well, he was able to talk about Keeter's statements and cross-examine Keeter throughout Keeter's testimony in that sense. He did, he was able to. The fact that his sister had her, had the victim's ring and that his sister's character testimony basically was worthless. Yes. The statements, the context of this counsel did come back and cross and was able to elicit things that the mother didn't know about Keeter and things that the sister didn't know about Keeter. But the overall implication of this added to the credibility problem that Appellant had, and again, I want to emphasize that the most serious factor here is the jury. And just quickly, because I'm going to reserve some time, but one reason we know all of this matters is the jury verdicts. The jury rejected the prosecution case. It's a little bit of a puzzle as to what they were finding, but they, prosecution cases, it doesn't matter who the shooter was. This was a robbery. Well, the jury convicted both defendants of robbery, but did not convict Keeter of felony murder. How they did that is difficult to determine, but one reason they might have done it is they might have determined, well, we've got a case where we don't know really what the motivation for the killing was. So they, in that sense, might have thought, well, maybe the taking of property was an afterthought. They weren't given theft instructions as a lesser included offense instruction, so maybe the reason they convict Keeter of robbery is because they don't have an option of convicting him on taking a property other than the car, because that was a separate account for that. But taking of the other property, the only way they can convict him of theft is, or taking of property, is by robbery, because they don't get the theft lesser included instruction. So in that sense, the jury rejected the prosecution case, and there's a very real possibility that they saw this as a homicide with a different motivation than the felony murder. And that the credibility then became a factor, and they decided that it was they were going to go with Keeter. And that's why the spearagement of counsel mattered so much. I'll reserve the rest of my time. Okay. Thank you, Mr. Sago. Mr. Friedlander. Good morning. On the first issue, counsel has yet to cite a single case, much less a United States case, where a definition or an instruction of this type is going to cause the jury to misapply the law. He has, again, not dealt with the case that we cited, Waddington v. Sarasot, which says that you must find a reasonable likelihood of misapplication of law. And in doing that, you have to look at the totality of the circumstances, including the prosecutor's argument and the defense counsel's argument. None of that ñ nowhere in closing arguments was this admonition mentioned. It came after ñ I'm having difficulty hearing you, Mr. Friedlander. I'm sorry. Nowhere did counsel in closing arguments allude to this admonition. They did not play on it. It was brief. It was not repeated. And as you mentioned, it was followed by an admonition not to infer that the judge was asking the jury to make any factual findings at all. I just want to say about Ho v. Carey, cited in his brief, that case is effectively overruled by Waddington, which says that you do not only apply the reasonable likelihood standard in cases of ambiguous instructions, but in all cases. And to do otherwise, to try to determine first whether it's ambiguous, is to lead you in an impossible knot where you're applying the reasonable likelihood standard to determine whether something is ambiguous in order to determine whether you should apply the reasonable likelihood standard. Enough said about that. There's no difficulty in understanding the jury's verdicts, even if there was difficulty in understanding it wouldn't matter. The jury could convict Keter of robbery based on his aiding and abetting the taking, under California law, taking away of the loot because the robbery continued until the loot reached a place of temporary safety. So they could have reasonably determined that he was in on the thing as soon as the killing happened. That made him guilty of robbery. It didn't make him guilty of felony murder. I don't need to address the bad acts evidence. The Court appears to understand that perfectly well. If there are questions, I'm happy to answer them. If there are not, I'm willing to submit it. Kagan. Thank you. Roberts. Just briefly, on the robbery issue, under California law, the defendant, whether it's the perpetrator or an aider and abetter, has to have the intent to permanently deprive the owner of the property at the time of the use of force or fear. So if the intent, that intent was formed later, there's no robbery and there's no felony murder. On Waddington, the Court did not have the question before it whether it was going to modify its earlier decisions in Boyd and Estelle v. Quickwire, where they clearly say reasonable likelihood test is a test that's used when you have ambiguous instructions. This Court's decision in Hove v. Curie has not been overruled. Thank you. Okay. Thank you, counsel, for your argument. The matter just argued will be submitted and the Court will be in recess for the
judges: Hug, Rymer, McKeown